IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MATTHEW PETRONE, and GREGORY ANDERSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLIS TECHNOLOGIES INC., <br><br> Defendant. | Case No. <br><br> JURY TRIAL DEMANDED |

# CLASS ACTION COMPLAINT

Plaintiffs Matthew Petrone and Gregory Anderson ("Plaintiffs"), by and through their attorneys, makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant Metropolis Technologies Inc. ("Metropolis" or "Defendant").

## NATURE OF THE ACTION

1. This is a class action against Defendant for unlawfully obtaining and using personal information of drivers from their driver motor vehicle records ("DMV records") in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA").

2. Defendant owns and operates over 4,000 parking facilities in North America, with thousands of locations across the country. Defendant's facilities operate entirely through the use

of license plate reading technology/cameras that allow Defendant to track vehicles when they enter and exit a parking garage or parking lot. Rather than utilizing gates or parking lot attendants, Defendant requires customers to pay for their parking through a QR code or mobile application on their phone.

3. Defendant's parking facilities do not adequately alert drivers through signage or otherwise that they must pay to park in the facilities. Because of this, many drivers do not pay for their parking and exit the facility under the reasonable assumption it was a free parking lot or garage.

4. However, Defendant utilizes the license plate numbers they collect from unknowing drivers to obtain personal information from their DMV records, including their name and address.

5. Defendant then sends citations to drivers who did not pay for their parking to the address listed on their DMV records. These citations are designed to look like official parking citations issued by the government but are in fact "issued" by Defendant. They are entitled "**NOTICE OF PARKING VIOLATION**" and purport to impose "fines" against vehicle owners.



6. Defendant profits off the illegal use of drivers' personal information obtained through their DMV records by mailing fake parking citations to vehicle owners and threatening them with severe consequences if they do not pay exorbitant sums.

7. What's more, Defendant sends citations to drivers who did not park in their facility and only passed through.

8. Plaintiffs and Class members were never informed that their personal information would be obtained by Defendant through their DMV records or otherwise, nor did they consent to this.

9. Defendant obtains drivers' personal information, including their name and address, from their DMV records without the lawful consent of drivers, and without a lawfully permitted reason under the DPPA.

A. **Introduction to the DPPA**

10. In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified purposes. The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

11. Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

12. The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA, personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

13. Regrettably, there are still occasions where bad faith actors like Metropolis disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes. This is one such case. Metropolis's entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass, intimidate, deceive, and ultimately defraud consumers. This action aims to stop Metropolis's unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

## PARTIES

14. Plaintiff Matthew Petrone is a natural person and resident of Nashville, Tennessee. In or around May 2024, Mr. Petrone received a "Notice of Parking Violation" in the mail at his home address. The notice was sent by Defendant, stating "you have received this violation because a vehicle registered to you recently parked at a Metropolis-managed parking facility and left without paying the amount due." The notice included a photo of Mr. Petrone's vehicle entering Defendant's parking facility located at 222 2nd Avenue in Nashville, Tennessee at 12:57pm on April 8, 2024, and exiting the facility on the same date at 1:12pm. The notice informed Mr. Petrone that he owed Defendant $76.82 to be paid online. At the bottom of the

citation, Metropolis threatened Mr. Petrone as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred it a collection agency or incur other legal action future ticketing, booting and/or towing, at the sole discretion of Metropolis."

15. Mr. Petrone does not recall ever parking in Defendant's parking facility at 222 2nd Avenue. Mr. Petrone may have driven through the facility without parking. Regardless, Mr. Petrone does not recall seeing any signage indicating that he must pay to park in the facility, or that his license plate information was being captured by Defendant to obtain Mr. Petrone's personal information from his DMV records. Mr. Petrone did not pay for the parking violation.

16. Plaintiff Gregory Anderson is a natural person and resident of Clarksville, Tennessee. In or around February 2024, Mr. Anderson received a "Notice of Parking Violation" in the mail at his home address. The notice was sent by Defendant, stating "you have received this violation because a vehicle registered to you recently parked at a Metropolis-managed parking facility and left without paying the amount due." The notice included a photo of Mr. Anderson's vehicle entering Defendant's parking facility located at 300 Jefferson Street in Nashville, Tennessee and exiting the facility on the same date. The notice informed Mr. Anderson that he owed Defendant for the parking and an additional fee to be paid online. At the bottom of the citation, Metropolis threatened Mr. Anderson as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred it a collection agency or incur other legal action future ticketing, booting and/or towing, at the sole discretion of Metropolis."

17. Mr. Anderson does not recall seeing any signage indicating that he must pay to park in the facility, or that his license plate information was being captured by Defendant to

obtain Mr. Anderson's personal information from his DMV records. Mr. Anderson did not pay for the parking violation.

18. Defendant Metropolis Technologies Inc. is a Delaware Profit Corporation which regularly conducts business in Tennessee, without having registered as a foreign corporation in Tennessee, having its headquarters located at 144 2nd Ave. N., Ste. 300, Nashville, TN 37201.

## JURISDICTION AND VENUE

19. This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 because the claims asserted arise from a federal statute.

20. This Court has personal jurisdiction over Metropolis because it regularly transacts business within the State of Tennessee and its headquarters are located in Nashville, Tennessee.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

22. Metropolis is a Delaware corporation that primarily manages and operates parking lots and garages owned by third parties throughout Tennessee and the United States.

23. Metropolis uses a "drive in and drive out" or "checkout-free" system for parking that it developed.

24. Metropolis utilizes camera-based license plate detection and recognition technology within the parking lots and garages it manages. This technology captures, stores and transmits images of the license plates on vehicles entering and exiting its parking facilities.

25. Each time a car enters and/or exits one of Defendant's parking facilities, Defendant utilizes the license plate information its cameras collect to obtain DMV records of drivers, including personal information such as their names and address.

26. Defendant's website explains: "Our technology automates routine tasks like enforcement by automatically identifying and escalating issues, empowering Metropolis-led operations to be more efficient."

27. When a vehicle exits a Metropolis parking facility, Metropolis utilizes its camera technology to determine whether the driver paid for their parking. If Defendant determines a driver did not pay for parking, it mails them an ominously entitled "Notice of Parking Violation" to the registered owner of the vehicle. Defendant obtains the driver's address through illegally accessing their driver motor vehicle records.

28. These "Notices of Parking Violation" are disguised to resemble government parking citations. They accuse vehicle owners of committing "violations," and they impose "violation fines" against them.

29. These citations also illegally threaten to "boot" and "tow" vehicles for unpaid citations, charge illegal services fees, and impose exorbitant penalties against vehicle owners.

30. Consequently, vehicle owners typically pay the sums demanded in the citations and suffer injury by way of Metropolis's invasion of their privacy.

31. Additionally, social media is replete with complaints about Metropolis and the same practices that appear on this complaint, evident by their 1.04 average customer review rating on Better Business Bureau. For example, on July 7, 2024, "Timothy W" wrote:

> After parking at a lot in downtown Nashville that was operated by LAZ Parking. The QR code worked and informed us that parking was a total of $4.83 for 2 hours. We were surprised by the low rate and had considered coming back to downtown again in the future and parking at the same lot. We did not exceed the 2 hours. My credit card information was given and charged. Now we received in the mail a violation bill for $93.30 from METROPOLIS. ($23.05 Unpaid Fare + $70.25 Violation Fine). Why not charge the card given before attempting to send a shake-down letter with a violation fine? Lawmakers MUST pass legislation to clamp down on this abuse! Do not park or even drive into a lot owned by Metropolis. After

performing a little research it seems they are not good folks. One star is clearly too much for this company.

32. Similarly, on June 4, 2024, "elaine l" wrote:

Despicable company - we parked for an event and thought our parking was already handled - there was no attendant, the gate was up and there were no visible signs for paying. We received a "ticket"? in the mail - the fee for parking was $5.50 and the PENALTY FINE was $71 - absolutely criminal!! They should not be able to run a business this way and should be held accountable! I would give zero stars but this website is making me choose at least 1 star....

33. The DPPA governs the manner by which certain personal information can be accessed or disclosed and imposes penalties for violations of its provisions.

34. Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

35. Metropolis is a "person" within the meaning of 18 U.S.C. 2725(2).

36. Metropolis obtained Plaintiffs' and Class Members "Personal Information," as defined by the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

37. A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id*.

38. DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the access and use of such information for a limited number of purposes designed to promote public welfare.

39. Metropolis's use of official motor vehicle records to obtain the personal information of Plaintiffs and Class members, and send parking citations when applicable, is not permissible under the DPPA.

40. Metropolis did not receive Plaintiffs' or Class members express written consent prior to accessing their personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12). The DPPA does not provide a lawful basis for Defendant to obtain said information.

41. Plaintiffs and Class members never waived their rights to privacy under 18 U.S.C. § 2721(d).

42. Metropolis's conduct as set forth above caused Plaintiffs and Class members harm, including violations of their statutory rights, invasion of their privacy, intrusion upon seclusion, harassment and annoyance.

43. Accordingly, Plaintiffs have standing to bring his claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''") (quoting William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 389 (1960)).

## CLASS ALLEGATIONS

44. **Class Definition:** Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows:

> All natural persons in the United States whose Personal Information, as defined by the DPPA, was obtained, used and/or disclosed by Defendant, Metropolis Technologies, Inc., and/or any of its agents, in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

45. Expressly excluded from the Class are:

(a) Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b) Metropolis and any entity in which Metropolis has a controlling interest, or which has a controlling interest in Metropolis and its legal representatives, assigns and successors; and

(c) All persons who properly execute and file a timely request for exclusion from the Class.

46. **Numerosity:** The number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

47. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

(a) Whether Metropolis's parking citation is uniform in all relevant aspects for the Class;

(b) Whether Metropolis had any permissible purpose within the meaning of the DPPA when it obtained the Personal Information of Plaintiffs and the Class;

(c) Whether Metropolis obtained, disclosed, or used the Personal Information of Plaintiffs and the Class in violation of the DPPA and is therefore liable to Plaintiffs and the Class;

(d) Whether Plaintiffs are entitled to a judicial determination that Defendant's actions violate the DPPA as well as the rights and obligations of the Parties with respect to the demand for payment;

(e) Whether Plaintiffs are entitled to an injunction against Defendant from committing future violations of the DPPA and sending unlawful demands for payment;

(f) Whether Metropolis's systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive damages against Metropolis and in favor of Plaintiffs and the Class, as provided by the DPPA.

(g) Whether Plaintiffs and the members of the Class have sustained damages and, if so, the proper measure of such damages.

48. **Adequate Representation:** Plaintiffs have retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendant took.

49. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also

present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with the DPPA.

**COUNT I**
**Violation of the Driver's Privacy Protection Act**
**18 U.S.C. § 2721, *et seq.***
**(DPPA Class).**

50. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-49, as if set forth fully herein.

51. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

52. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

53. Metropolis knowingly obtained, disclosed and used personal information from a motor vehicle record in order to track who utilizes its parking facilities and to send Plaintiffs and Class members an illegal parking citation, which is not a permissible purpose under the DPPA.

54. Upon information and belief, Defendant acted with respect to Plaintiffs and Class members in willful, or at the very least, reckless disregard of the law in that Defendant knew it

was unlawful to access, disclose, obtain and/or use Plaintiffs' and Class members' personal information from non-public motor vehicle records in violation of the DPPA.

55. Plaintiffs and Class members did not provide Defendant with any form of consent to access their personal information from their driver motor vehicle records.

56. Plaintiffs and Class members were harmed by Defendant's conduct in that Defendant's violated Plaintiffs' and Class members' right to privacy and statutory rights.

57. On behalf of themselves and Class members, Plaintiffs seek: (i) declaratory relief; (ii) injunctive relief and equitable relief as is necessary to protect the interests of Plaintiffs and Class members by requiring Defendant to comply with DPPA and/or seize their current practices; (iii) statutory damages of $2,500 per violation of the DPPA pursuant to 18 U.S.C. § 2724(b) of the DPPA; and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek a judgement against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the Class representatives, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the DPPA, as reference herein;

(c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d) An award of statutory damages equal to actual damages, but not less than liquidated damages in the amount of $2,500;

(e) Punitive damages upon proof of willful or reckless disregard of the law;

(f) For an order permanently enjoining Metropolis from further violating the DPPA;

(g) For an order awarding Plaintiffs and Class members their reasonable attorneys' fees and expenses.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury on all claims so triable.

Dated: July 30, 2024

Respectfully submitted,

**STRANCH, JENNINGS & GARVEY, PLLC**
By: /s/ *J. Gerard Stranch, IV*
J. Gerard Stranch , IV (BPR 23045)
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
Email: gstranch@stranchlaw.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
Caroline C. Donovan*
1330 Avenue of the Americas, Fl 32
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
　　　　cdonovan@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com

*pro hac admissions forthcoming*

*Attorneys for Plaintiffs*